[Cite as *State v. Cook*, 2017-Ohio-7552.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                              |   | JUDGES:                        |
|------------------------------|---|--------------------------------|
| STATE OF OHIO                | : | Hon. W. Scott Gwin, P.J.       |
|                              | : | Hon. William B. Hoffman,  J.   |
| Plaintiff-Appellee           | : | Hon. Earle E. Wise, J.         |
|                              | : |                                |
| -vs-                         | : |                                |
|                              | : | Case No. 17-CA-23              |
| ASHLEY N. COOK               | : |                                |
| Defendant-Appellant          | : |                                |
|                              | : | O P I N I O N                  |

CHARACTER OF PROCEEDING:      Criminal appeal from the Fairfield Municipal Court, Case No. CRB 16 02531

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 7, 2017

APPEARANCES:

For Plaintiff-Appellee

DANIEL E. COGLEY
Assistant Law Director
136 West Main Street
Lancaster, OH 43130

For Defendant-Appellant

JAMES R. KINGSLEY
157 West Main Street
Circleville, OH   43113

*Gwin, P.J.*

{¶1}   Appellant Ashley Cook appeals the May 9, 2017 Judgment Entry of the Fairfield County Municipal Court that granted the state's motion to disqualify her criminal defense attorney.

*Facts and Procedural History*

{¶2}   Matthew W. Kish is divorced from his former wife Melissa E. Kish.  The couple have two minor children.  Kish presently resides with Appellant.

{¶3}   After the weekend of Kish's possession time, July 10 - 13, 2016, his minor son, W.K. (b. 06.11.2013) was delivered by father to daycare where severe bruising to the child's bottom was observed and reported to the child's mother.

{¶4}   On October 5, 2016, Kish was charged in Fairfield County Municipal Court with Count A, Domestic Violence, M1, contrary to R.C. 2919.25(A) (physical harm to W.K.); Count B, Endangering Children, M1, contrary to R.C. 2919.22(A) (substantial risk of harm to W.K. by violating parental duty); Count C, Endangering Children, M1, contrary to R.C. 2919.22(B)(1) (abusing W.K.); Count D, Complicity to Endangering Children, M1, contrary to R.C. 2923.03(A)(2) (aid and abet Ashley Cook); Count E, Complicity to Endangering Children, M1, contrary to R.C. 2923.03(A)(2) (identical to Count D)[1].

{¶5}   Appellant on the same date in the same court was charged with Count A, Assault, M1, contrary to R.C. 2903.13(A) (physical harm to W.K. ); Count B, Endangering Children, M1, contrary to R.C. 2919.22(A) (substantial risk of harm to W.K. by violating +++parental duty); Count C, Endangering Children, M1, contrary to R.C. 2919.22(B)(1) (abuse W.K.); Count D, Complicity to Endangering Children, M1, contrary to R.C.

---

[1] *State v. Matthew W. Kish,* Fairfield County Municipal Court, Case No. 2016 CRB 02532

2923.03(A)(2) (aid and abet Matthew Kish); and Count E, Complicity to Endangering Children, M1, contrary to R.C. 2923.03(A)(2) (same as Count D).[2] Appellant and Kish are represented by the same attorney.[3]

{¶6} On December 8, 2016, both Kish and Appellant moved the trial court to join their respective cases for jury trial. The trial court granted the joinder, noting "The court finds that the complaints alleging excessive corporal punishment against one child by both defendants on one date are identical and judicial economy dictates the same facts not be tried twice." *Joinder Entry,* Fairfield County Municipal Court, filed Dec. 15, 2016.

{¶7} On March 20, 2017, in *State v. Ashley Cook*, Fairfield County Municipal Court, Case No. 2016 CRB 02531, the state filed a motion to establish a conflict of interest for defense counsel's joint representation of Kish and Appellant. The ground for the motion was that the state had extended a plea offer "in exchange for Kish's truthful testimony against [Cook] in this case." Appellant filed a response to the state's motion to disqualify on March 24, 2017, noting,

> Counsel replied to [the prosecutor] that Kish's testimony would be truthful but not helpful to the State. Kish's response was that he cannot tolerate any conviction on his record, even a minor misdemeanor, as he is a law enforcement officer with the Franklin County Sheriff's Office. Further, his ex-wife would use any plea as an admission in the pending contested custody case which is based upon the facts of this case. The State declined to outright dismiss the charges.

---

[2] *State v. Ashley Cook,* Fairfield County Municipal Court, Case No. 2016 CRB 02531.
[3] The same attorney represents both Cook and Kish on appeal.

{¶8} By Judgment Entry filed April 5, 2017, the court set the motion for an oral hearing. At the hearing, the record reflects that the state offered Kish a plea to the lesser offense of disorderly conduct with persistence, a misdemeanor of the fourth degree, if he would testify against Appellant.  T. at 5-6.  Kish responded on the record, reiterating the reasons set forth in his response as reasons for rejecting the plea offer.  When asked by his attorney, the following exchange occurred,

> [Attorney]:  And your position is unless there's an outright dismissal, then there's no plea bargain to be entered here?

> Kish:   Yeah, I'm not going to plead to false allegations.

T. at 11.  Both Appellant and Kish stated on the record that they were satisfied with having the same attorney represent both of them.  A written disclosure of potential conflict was entered into evidence.

{¶9} On May 9, 2017, Judge Fields disqualified defense counsel from representing both defendants at trial finding,

> The State has asserted orally and in its post hearing brief that it has made an offer for one co-defendant to testify against the other for a plea offer.  Mr. Kish indicated at the oral hearing that he would not take a plea deal because nothing happened.  However, the offer has been made and seemingly discussed by defense counsel and his clients.

> The Court finds that [defense counsel] is placed in a conflict situation despite his unquestionable ability as a defense attorney.  The Court must look to the interest of each of the Defendants and their right to have effective assistance free of conflict.

*Assignment of Error*

{¶10} Appellant raises one assignment of error[4],

{¶11} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DISQUALIFIED THE COUNSEL CHOSEN BY BOTH DEFENDANTS TO REPRESENT THEM IN A JOINT TRIAL."

*Law and Analysis*

{¶12} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  An element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.  *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  The erroneous denial of counsel of choice constitutes structural error.  *United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *State v. Chambliss*, 128 Ohio St.3d 507, 2011–Ohio–1785, 947 N.E.2d 651, ¶18.  Such an error requires an automatic reversal of a conviction.  *Chambliss,* ¶ 18; *Gonzalez–Lopez*, 548 U.S.  at 148.

{¶13} The right to counsel of choice is not unqualified, but is "only a presumptive right to employ * * * chosen counsel."  *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998).  "'[T]hat presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'"  Id., *quoting Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an

---

[4] Kish has filed a separate appeal in *State v. Kish,* 5th Dist. Fairfield No. 2017-CA-23.

attorney with undivided loyalty. *See Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

{¶14} Dual representation is not a per se violation of due process. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426(1978), *citing Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680(1942). It is possible that dual representation can work to the advantage of the clients in cases when they mount a common defense against charges. Id. at 483. However, joint representation of conflicting interests is "suspect because of what it tends to prevent an attorney from doing." *Holloway v. Arkansas*, 435 U.S. 475, 489–490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 438(1978). Thus, a possible conflict of interest is inherent in almost all instances of joint or multiple representation of conflicting interests. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346(1980).

{¶15} "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *State v. Manross*, 40 Ohio St.3d 180, 182, 532 N.E.2d 735, 738(1988). A possibility of a conflict exists if the "interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties." *Cuyler*, 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351–352, fn. 3 (Marshall, J., *concurring in part and dissenting in part*).

{¶16} Trial courts presented with a conflict have an affirmative duty to protect a defendant's rights. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In every case of joint representation, if the court "knows or reasonably should know that a particular conflict exists" it must initiate an inquiry about that conflict. *Cuyler*,

446 U.S. at 347, 100 S.Ct. 1708. *Accord*, *State v. Dillon,* 74 Ohio St.3d 166, 168, 657 N.E.2d 273(1995).

{¶17} "'[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion.'" *State v. Keenan,* 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998), *quoting State ex rel. Keenan v. Calabrese,* 69 Ohio St.3d 176, 180, 631 N.E.2d 119 (1994). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Further, in reviewing the trial court's action, an appellate court must be cognizant of the context within which the ruling is made, and that "'[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict.'" *Wheat v. U.S.,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

{¶18} In *Keenan*, the Ohio Supreme Court held that a criminal defendant's presumptive right to counsel may be overcome by a showing of an actual or serious potential for conflict. *Keenan* at 137, 689 N.E.2d 929, *citing Wheat*. In *Keenan*, a death penalty case, the trial court disqualified the defendant's retained counsel of choice because counsel had previously represented a co-defendant.

{¶19} The Ohio Supreme Court determined that the trial court did not abuse its discretion by disqualifying counsel, because regardless of "whether or not an actual conflict of interest existed, there clearly was a potential conflict of interest inherent in Keenan's representation by the same attorneys who had represented [his co-defendant] in litigation stemming from the same set of facts. '[A] possible conflict inheres in almost

every instance of multiple representation.'"  *Keenan* at 137, 689 N.E.2d 929, *quoting*

*Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

{¶20}  "The trial judge has 'wide latitude' in determining that an actual or potential

conflict exists."  *Keenan*, 81 Ohio St.3d at 137, 689 N.E.2d 929, *quoting United States v.*

*Mays,* 69 F.3d 116, 121 (6th Cir. 1995).  A possibility of a conflict of interest exists if the

"'interests of the defendants may diverge at some point so as to place the attorney under

inconsistent duties.'"  *State v. Dillon*, 74 Ohio St.3d 166, 168, 657 N.E.2d 273 (1995),

*quoting Cuyler v. Sullivan*, 446 U.S. 335, 356, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), fn.

3 (Marshall, J., *concurring in part and dissenting in part*).  An "actual, relevant" conflict of

interest exists if "'during the course of the representation, the defendants' interests do

diverge with respect to a material factual or legal issue or to a course of action.'"  *Cuyler*

at 356, fn. 3 (Marshall, J., *concurring in part and dissenting in part*).

{¶21}  Moreover, a trial court "must be allowed substantial latitude in refusing

waivers of conflicts of interest not only * * * where an actual conflict may be demonstrated

before trial, but in the more common cases where a potential for conflict exists which may

or may not burgeon into an actual conflict * * *."  *Keenan*, 81 Ohio St.3d at 137, 689

N.E.2d 929, *quoting Wheat* at 163.  As the Supreme Court of the United States has

explained:

> The likelihood and dimensions of nascent conflicts of interest are
> notoriously hard to predict, even for those thoroughly familiar with criminal
> trials.  It is a rare attorney who will be fortunate enough to learn the entire
> truth from his own client, much less be fully apprised before trial of what
> each of the Government's witnesses will say on the stand.  A few bits of

unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Wheat,* 486 U.S. at 162-163, 108 S.Ct. 1692, 100 L.Ed.2d 140.

**{¶22}** In *Keenan*, the Ohio Supreme Court found the existence of a potential conflict was "fatal" to Keenan's appeal, and it was "irrelevant" that both Keenan and his codefendant waived their right to conflict free counsel. 81 Ohio St.3d at 136-137, 689 N.E.2d 929.

**{¶23}** In *Wheat*, the United States Supreme Court recognized circumstances in which "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." 486 U.S. at 163, 108 S.Ct. 1692. The United States Supreme Court further noted, however, "trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of a decision." Id.

**{¶24}** Potential conflicts that can arise where the same attorney represents co-defendants can include where both of the defendants wish to testify but they have differing explanations as to how the relevant events transpired. Where one of the defendants wishes to testify while the other does not and the silence of one might suggest to the jury

that he alone is guilty of the crime.  Additionally, the evidence against one of the defendant's may be stronger than the evidence against the other and comparison of the respective strengths of the evidence against the two during plea bargaining or examination of witnesses or closing argument would be helpful to the defendant faced with the weaker evidence but would be harmful to the defendant faced with the stronger evidence.

{¶25}  In the case at bar, we find that the state's offer of a plea bargain to Kish to be, in and of itself, insufficient to demonstrate a conflict of interest.

{¶26}  In *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), defense counsel allowed a plea offer to expire without communicating the offer to the defendant resulting in the defendant accepting a later offer that was less favorable.  *Frye,* at 1404.  The Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea...." 132 S.Ct. at 1408.  Given this duty, the Court emphasized that the right to effective assistance of counsel extends to the negotiation and consideration of plea offers that have been rejected or have lapsed.  Id. at 1407–08.

{¶27}  In *Lafler v. Cooper,* __ U.S.__, 132 S.Ct. 1376, 182 L.Ed. 398 (2012), a favorable plea offer was reported to the client and rejected on the advice of counsel, who advised the defendant that the state could not prove intent because the victim was shot below the waist, even though the defendant shot the victim three times and missed her head once.  The defendant took the case to trial and was convicted, after which he received a sentence more than three times higher than the plea offer.  Notably, in an earlier communication with the trial court, the defendant had admitted guilt and expressed a willingness to accept the plea offer.

{¶28} In *Lafler*, the Court reiterated that the Sixth Amendment requires effective assistance not just at trial but at all critical stages of a criminal proceeding, including plea bargaining.  132 S.Ct. at 1384.  In order to prevail on a claim of ineffective assistance of counsel when counsel's ineffective advice led to the rejection of a plea offer, the Court held that "a defendant must show that but for the ineffective advice, there is a reasonable probability that [1] the plea offer would have been presented to the court ...; [2] the court would have accepted [the plea];" and (3) the defendant was convicted of more serious offense or received a less favorable sentence than he would have received under the terms of the offer. Id. at 1385.  However, defense counsel's deficient performance was stipulated in *Lafler. Id.* at 1383, 1391.  The issue of deficient performance was not before the Court and was specifically not addressed.  *Id.* at 1384, 1391.  In fact, the Court declared, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.* at 1391.

{¶29} In the case at bar, Kish was informed of the plea bargain and rejected it in open court for reasons unrelated to the fact that his attorney also represents Appellant. Nothing in the record before this Court suggests that counsel advised Kish to reject the plea bargain.  Further, we are mindful that in *Florida v. Nixon*, the United State Supreme Court made the following observation,

> A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Wainwright v. Sykes*, 433 U.S. 72, 93, n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring).

Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

* * *

While a guilty plea may be tactically advantageous for the defendant, [*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)], at 240, 89 S.Ct. 1709, the plea is not simply a strategic choice; it is "itself a conviction," id., at 242, 89 S.Ct. 1709, and the high stakes for the defendant require "the utmost solicitude," id., at 243, 89 S.Ct. 1709. Accordingly, counsel lacks authority to consent to a guilty plea on a client's behalf, *Brookhart v. Janis*, 384 U.S. 1, 6-7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); moreover, a defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid, *Boykin*, 395 U.S., at 242, 89 S.Ct. 1709.

534 U.S. 175, 187-188, 125 S.Ct. 551, 160 L.Ed.2d 565(2004).

{¶30} That being said, we find that the trial court correctly concluded that, regardless of whether an actual conflict exists, there is clearly a potential conflict of interest inherent in counsel's simultaneous representation of Appellant and Kish in litigation stemming from the same of set of facts. *See Keenan*, 81 Ohio St.3d at 136–137, 689 N.E.2d 929. Neither the trial court, nor this court can foresee what evidence the state will present at trial, or what each of the co-defendants may wish to explore prior to trial. For instance, it is possible that Kish will change his position and claim Appellant committed the charged offenses alone. The evidence at trial may more strongly incriminate one defendant over the other. It is also possible that the evidence could more strongly exculpate one defendant over the other. Counsel representing both defendants

would be precluded from arguing those facts to the jury that tend to incriminate one defendant but not the other or tend to exculpate one defendant but not the other. Additionally, while Kish rejected a plea bargain, Appellant may desire to explore potential plea bargains with the state rather than go to trial.

{¶31} While the Appellants waived any conflict, the court was free to refuse their waiver. As in *Keenan*, nothing in the record suggests that the trial court's decision to refuse the waiver and remove retained counsel was unreasonable, arbitrary, or unconscionable. Instead, it is clear the court based its decision on the potential for conflict and the court's desire to protect both of the Appellants' constitutional rights.

{¶32} Appellant's sole assignment of error is overruled.

{¶33} The judgment of the Fairfield County Municipal Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur