IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                        :

    Plaintiff-Appellee,       : CASE NO. 20CA3935

    v.                             :

SASHIA JOHNSON,               : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.     :

_____

APPEARANCES:

Roger Soroka and Joshua Bedtelyon, Columbus, Ohio, for appellant.

Shane Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-28-22
ABELE, J.

**{¶1}** Sashia Johnson, defendant below and appellant herein, appeals the trial court's granting of the state's motion to disqualify her attorney. Appellant assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN DENYING APPELLANT HER SIXTH AMENDMENT RIGHT TO COUNSEL BECAUSE THE COURT DID NOT HAVE AN AFFIRMATIVE DUTY TO INQUIRE INTO POSSIBLE CONFLICTS OF INTEREST BETWEEN CODEFENDANTS JORDAN AND JOHNSON."

SCIOTO, 20CA3935

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DENYING APPELLANT HER SIXTH AMENDMENT RIGHT TO COUNSEL BECAUSE THERE WAS NO ACTUAL CONFLICT OF INTEREST BETWEEN CODEFENDANTS JORDAN AND JOHNSON."

{¶2} On June 29, 2020, a Scioto County Grand Jury returned an indictment that charged appellant with (1) trafficking in cocaine in violation of R.C. 2925.03(A)(2) and possession of cocaine in violation of R.C. 2925.11(A), both first-degree felonies with major drug offender and forfeiture specifications, and (2) possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony. On the same date, a Scioto County Grand Jury returned an indictment that charged Co-defendant Adrienne Jordan (*see State v. Jordan,* 4th Dist. Scioto No. 20CA3936, 2022-Ohio-XXXX) with identical offenses. The same attorney represented appellant and Co-defendant Jordan[1].

{¶3} After the state raised the issue of conflicting representation, at the September 3, 2020 hearing appellant's counsel argued that (1) a criminal defendant has a fundamental right to be represented by an attorney of their choice, (2) counsel advised his clients of potential conflicts, and (3) counsel obtained conflict waivers from each client. Also, both appellant

---

[1] The same attorney represents appellant and Jordan on appeal.

and Jordan told the trial court on the record that they wished to have the same attorney represent them both, and provided written disclosures of potential conflict.

{¶4} At a second hearing, the trial court inquired about the particular facts involved in the traffic stop that resulted in the indictments, including who drove the vehicle, who owned the vehicle and the precise location within the vehicle where officers found the drugs. Concerning the cocaine, the state replied, "in the center console, accessible to both Defendants." When asked about the marijuana, the state replied, "[t]here was residue in the driver's side door panel, and there were baggies of marijuana retrieved from Defendant Jordan's purse." The state also indicated that the co-defendants' cell phones were "being downloaded by the O.S.P. lab." The court then asked defense counsel, "why wouldn't Ms. Johnson at trial want to argue that this is Ms. Jordan's narcotics?" Counsel answered "they understand that" and indicated that he had filed a suppression motion[2], "so we don't necessarily get to that trial until we have that suppression hearing. * * * They would not have to make that decision, but at this point they are aware that that would potentially be a defense available to them, and neither of them are interested in that defense." At that

---

[2] Appellant and Co-defendant Jordan filed a motion to suppress evidence on October 2, 2020.

point, appellee interjected that "any offers that would be considered being made by the State would occur before that [suppression] hearing. Once that hearing is underway it will be a plead as charged situation or go to trial." Defense counsel then responded, "which was relayed at the last hearing, Your Honor, and then relayed to our clients as well, and they still wish to proceed in this manner."

{¶5} On November 9, 2020, the trial court removed Soroka & Associates LLC as counsel and ordered appellant to obtain new counsel. The court wrote in part:

> In this matter the State has alleged that Johnson was the driver of a vehicle owned by either Jordan, or her family member, and Jordan was the passenger when they were stopped by the Troopers of the Ohio State Highway Patrol. The State further alleges that a large quantity of cocaine was found in the center console. Defendants, through counsel do not dispute these facts but allege that the suppression of evidence will decide the issue and the parties will not proceed to trial.
>
> The trial court cannot foresee what evidence the State will present at trial, or what each of the co-defendants may wish to explore prior to trial. In reviewing this matter this Court finds there is serious potential that one defendant will change her position and claim the other committed the charged offenses alone. The evidence at trial may more strongly incriminate one defendant over the other. It is also possible that the evidence could more strongly exculpate one defendant over the other. Counsel representing both defendants would be precluded from arguing those facts to the jury that tend to incriminate one defendant but not the other or tend to exculpate one defendant but not the other. Additionally, one defendant may desire to explore potential plea bargains with the State rather than go to trial. This

Court finds that there is a serious potential for a conflict of interest in dual representation of both defendants.

The hearing in this matter also included defendant Jordan's probation violation in 17-CR-733. Since that matter is separate and distinct from the issues raised in the case in which they are codefendants, this Court finds there is no actual or serious potential for conflict in defense counsel's continued representation in that matter.

Therefore, this Court refuses the waiver of conflicts offered in this matter and finds a serious potential for conflict of interest in the matter in which Johnson and Jordan are co-defendants, being case number 20-CR-388(A)/(B).

Wherefore, in case number 20-CR-388(A)/(B) defense counsel and the firm Soroka & Associates LLC are hereby removed as counsel of record and relieved of further responsibilities in this matter. Defendants are ORDERED to obtain new counsel within fourteen (14) days of the date of this entry. Defense counsel shall continue as counsel in the matter of State of Ohio v. Adrienne Jordan, 17-CR-733 [the probation violation case].

This appeal followed.

I.

**{¶6}** Because appellant's assignments of error are interrelated, we consider them together. In her first assignment of error, appellant asserts that the trial court did not have an affirmative duty to inquire into possible conflicts of interest between Co-defendants Jordan and Johnson and, thus, the court's order denied appellant her Sixth Amendment right to counsel. In her second assignment of error, appellant contends the court's order

denied appellant her Sixth Amendment right to counsel because no actual conflict of interest exists between Co-defendants Jordan and Johnson.

{¶7} "'[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion.'" *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998), quoting *State ex rel. Keenan v. Calabrese*, 69 Ohio St.3d 176, 180, 631 N.E.2d 119 (1994). The term 'abuse of discretion' implies that a court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When reviewing a trial court's decision concerning counsel disqualification, an appellate court must be cognizant of the context within which the ruling is made and aware that "'the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict.'" *Wheat v. U.S.,* 486 U.S. 153, 162, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

{¶8} The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a

defendant will inexorably be represented by the lawyer whom he [or she] prefers." *Wheat,* 466 U.S. at 159, citing *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) and *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Thus, the Sixth Amendment right to choose one's counsel "is circumscribed in several important respects," *Wheat, supra,* at 159, including the right to be free from conflicts of interest. *State v. Gillard*, 64 Ohio St.3d 304, 312, 595 N.E.2d 878 (1992); *accord State v. Pickett*, 4th Dist. Athens No. 15CA13, 2016-Ohio-4593, ¶ 49.

**{¶9}** In general, dual representation does not per se violate due process, *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and may even benefit clients in cases when a common defense may be mounted against charges. *Id.* at 483. However, "multiple representation of criminal defendants engenders special dangers of which a court must be aware." *Wheat, supra,* 486 U.S. at 159, 108 S.Ct. 1692, 100 L.Ed.2d 140. Therefore, both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict-free. *State v. Dillon,* 74 Ohio St.3d 166, 167-168, 657 N.E.2d 273 (1995).

**{¶10}** "[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat*, *supra*, at 159-160.

The Supreme Court of Ohio has held that a trial court does not have a duty to inquire regarding potential conflicts with dual representation unless the court knows or reasonably should know that a possible conflict of interest exists, or when the defendant objects to the multiple representation. *State v. Manross*, 40 Ohio St.3d 180, 181, 532 N.E.2d 735, (1988); *see also State v. Williams,* __ Ohio St.3d __, 2021-Ohio-3152, __ N.E.3d __.

{¶11} Thus, the right to counsel of choice is not unqualified, but is "only a presumptive right to employ * * * chosen counsel." *Keenan,* 81 Ohio St.3d 133, 137, 689 N.E.2d 929. "'[T]hat presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" *Id., quoting Wheat,* 486 U.S. at 164. While an essential element of the Sixth Amendment right to counsel is to have counsel of one's choice, and the "erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error,'" (internal citations omitted), a defendant may not "demand that a court honor his waiver of conflict-free counsel." *United States v. Gonzalez-Lopez,* 126 U.S. 140, 147, 150-152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).

{¶12} The Supreme Court of Ohio has stated that "[a] lawyer represents conflicting interests when on behalf of one client, it

is his duty to contend for that which duty to another client requires him to oppose." *Manross*, 40 Ohio St.3d at 182, citing *Columbus Bar Ass'n. v. Grelle*, 14 Ohio St.2d 208, 237 N.E.2d 298 (1968). "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. * * * [A] conflict may * * * prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." Holloway, 435 U.S. at 489-490, 98 S.Ct. 1173, 55 L.Ed.2d 426.

{¶13} The Fifth District has considered this issue in *State v. Kish*, 5th Dist. Fairfield No. 17-CA-22, 2017-Ohio-7551 and *State v. Cook,* 5th Dist. Fairfield No. 17-CA-23, 2017-Ohio-7552. In *Kish* and *Cook*, after a weekend visitation, authorities charged the co-defendants, presumably boyfriend and girlfriend, with domestic violence, endangering children and assault. When the same attorney represented both co-defendants, the state moved to disqualify and explained that a plea offer had been extended to Kish for testimony against Cook. Both co-defendants, however, expressed satisfaction with joint representation and provided written disclosures of any potential conflict. After the trial court disqualified defense counsel from representing both defendants, the Fifth District

concluded "there is clearly a potential conflict of interest inherent in counsel's simultaneous representation of [Cook and Kish] in litigation stemming from the same set of facts." *Cook* at ¶ 30, *Kish* at ¶ 32. The court wrote:

> Neither the trial court, nor this court can foresee what evidence the state will present at trial, or what each of the co-defendants may wish to explore prior to trial. For instance, it is possible that Kish will change his position and claim Appellant committed the charged offenses alone. The evidence at trial may more strongly incriminate one defendant over the other. It is also possible that the evidence could more strongly exculpate one defendant over the other. Counsel representing both defendants would be precluded from arguing those facts to the jury that tend to incriminate one defendant but not the other or tend to exculpate one defendant but not the other. Additionally, while Kish rejected a plea bargain, Appellant may desire to explore potential plea bargains with the state rather than go to trial.

*Id.*

The Fifth District further noted that, although appellants explicitly waived any potential conflict, the trial court could properly refuse to accept their waiver. *Cook* at ¶ 31, *Kish* at ¶ 33. "As in *Keenan,* nothing in the record suggests that the trial court's decision to refuse the waiver and remove retained counsel was unreasonable, arbitrary or unconscionable. Instead, it is clear the court based its decision on the potential for conflict and the court's decision to protect both of the Appellants' constitutional rights." *Id.*

{**¶14**} In another joint representation case, *State v. Rivera*, 2017-Ohio-8514,[3] multiple co-defendants indicated they wanted the same attorney to represent them, but the trial court expressed concern "about the codefendants' interests diverging once further discovery, plea discussions, and trial preparation began." *Id.* The Ninth District observed that "neither the trial court nor the appellate court can foresee what evidence will be presented at trial or what plea deals may be offered by the State and accepted by one or more of these individuals." *Id.* at ¶ 12. Joint representation could: (1) preclude counsel from exploring plea negotiations and agreements to testify favorable to one and prejudicial to another, (2) prevent counsel from challenging the admission of evidence prejudicial to one, but perhaps favorable to another, and (3) cause counsel to refrain from arguing at sentencing the relative involvement and culpability of one by minimizing the involvement of another. *Rivera* at ¶ 12.

{**¶15**} In *U.S. v. Brock*, 501 F.3d 762 (6th Cir.2007), after the government asked about the appropriateness of joint representation, the co-defendants sought to waive any conflict. The district court disqualified counsel because the situation was "rife with potential

---

[3] The complete citation for *Rivera* is *State v. Rivera*, 9th Dist. Lorain No. 16CA011057, 16CA011059, 16CA011060, 16CA011061, 16CA011063, 16CA0011073 and 16CA011075, 2017-Ohio-8514.

conflicts of interest." *Brock* at 766. Although the Sixth Circuit noted that the co-defendants' waivers did not adequately acknowledge potential conflicts, the court agreed with the district court's observation that it may be in one client's best interest to plead guilty and testify against the other. Also, if both defendants are found guilty, counsel may be in a position to contend that one or the other should receive a lesser sentence. *Id.* See, also, *Serra v. Michigan Dept. of Corrections,* 4 F.3d 1348, 1354 (6th Cir.1994), (defenses of each defendant "intrinsically antagonistic." *Id.* at 1350-1351). *United States v. Curcio,* 680 F.2d 881, 887 (2d Cir. 1982)(conflict implications include whether to present a defense that helps one defendant more than the other; whether to have one defendant testify while other remains silent; whether neither defendant testify because one poor or vulnerable witness; whether emphasize in summation that certain evidence admitted only against (or less compelling against) one defendant rather than other); *U.S. v. Garner,* E.D.Kentucky No. 12-CR-65-JMH, 2013 WL 99396 (Jan.7, 2013), fn. 2 (difficulties inherent in dual representation because attorney's ability to give best representation to both clients compromised when one defendant acts in own best interest and may hurt the other defendant's interests - also, the defendants desire for solidarity can be achieved with separate counsel, and court's conclusion does not

foreclose co-defendants opportunity to present a "unified" or "united" defense).

{¶16} Additionally, the Fifth District in *Cook* described conflicts in this manner:

> Potential conflicts that can arise where the same attorney represents codefendants can include where both of the defendants wish to testify but they have differing explanations as to how the relevant events transpired. Where one of the defendants wishes to testify while the other does not and the silence of one might suggest to the jury that he alone is guilty of the crime.
>
> Additionally, the evidence against one of the defendants may be stronger than the evidence against the other and comparison of the respective strengths of the evidence against the two during plea bargaining or examination of witnesses or closing argument would be helpful to the defendant faced with the weaker evidence but would be harmful to the defendant faced with the stronger evidence.

*State v. Cook*, 5th Dist. Fairfield No. 17-CA-23, 2017-Ohio-7552, ¶ 24.

{¶17} The United States Supreme Court also spoke at length to the minefield that trial courts must navigate to predict possible conflicts:

> Unfortunately for all concerned, a * * * court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. * * * It is the rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits

of unforseen testimony or a single previously unknown or unnoticed document may significantly alter the relationship between multiple defendants.  These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. * * *

For these reasons we think the district courts must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Wheat*, *supra,* 486 U.S. at 162-163, 108 S.Ct. 1692, 100 L.Ed.2d 140.

{¶18} "The United States Supreme Court has definitely recognized the authority of a federal district court to disqualify chosen defense counsel, over objection and despite waivers of conflict of interest, because of actual conflicts of interest or serious potential conflicts of interest." *United States v. Lamar*, E.D. Kentucky No. 09-82-DLB, 2013 WL 12221618, (Sept. 20, 2013) *10.  "Such discretion is warranted, moreover, because of the 'whipsaw' nature of waiver of conflict-free representation: 'If a trial court disqualifies counsel, defendant will argue * * * a violation of his Sixth Amendment right to counsel of his choice. If a trial court refuses to disqualify an attorney, a defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest, asserting that his waiver was not knowingly or voluntarily made.'" *U.S. v. Swafford*, 512 F.3d 833,

840 (2008), quoting *Serra* at 1353-1354, citing *Wheat*, 486 U.S. at 161-162, 108 S.Ct. 1692. *U.S. v. Mays*, 69 F.3d 116, 121 (6th Cir.1995)(district courts given wide latitude to make such determinations and decision  upheld unless 'arbitrary' or 'without adequate reasons').  *But see U.S. v. Gebbie*, 185 F.R.D. 516 (S.D. Ohio 1999) (disqualification not warranted because (1) co-defendants voluntarily, knowingly and intelligently waived Sixth Amendment right to conflict-free representation, (2) attorney steadfastly maintained no conflict exists, (3) attorney invested significant time and effort in lengthy and complex case and has a high level of knowledge that uniquely qualifies him, and (4) united defense is best for co-conspirators.)

{¶19} In the case sub judice, appellant asserts that because both co-defendants have been apprised of potential conflicts and have formally waived any conflict, the trial court should have denied appellee's request for disqualification.  However, as we point out above, *Wheat* "rejected the claim that waivers by all affected defendants cure any problems created by the multiple representation, noting that courts have an independent interest to ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them and that various rules of ethics and professional conduct impose limitations on multiple representation

of clients." *State v. Keenan*, 8th Dist. Cuyahoga No. 89554, 2008-Ohio-807, ¶ 27. Thus, courts must look beyond a waiver to determine if dual representation is appropriate. Here, we agree with the trial court's conclusion that potential conflicts of interest exist with the dual representation of appellant and her co-defendant. A trial court must be allowed "substantial latitude in refusing waivers of conflicts of interest not only * * * where an actual conflict may be demonstrated before trial, but in the more common cases [such as the case at bar] where a potential for conflict exists which may or may not burgeon into an actual conflict * * *." *Wheat,* 486 U.S at 163, 108 S.Ct.1692, 100 L.Ed.2d 140. Here, the trial court observed that, although the co-defendants argue that the eventual suppression of evidence would result in this matter not proceeding to trial, this outcome is not a certainty. Furthermore, unforeseen events, including unanticipated testimony or other evidence, could unexpectedly and quickly shift the relationship between the co-defendants. The trial court is also properly concerned about the possibility that one defendant may contend that her co-defendant alone committed the charged offenses. As the trial court pointed out: (1) the evidence adduced at trial could more strongly exculpate or inculpate one or the other co-defendant, and could place counsel in the position of arguing one client may have greater culpability than the other

client, and (2) the plea agreement process, including the reduction of the seriousness of an offense in exchange for testimony, could invite a potential conflict of interest in the dual representation of both defendants.[4]  As the *Wheat* court pointed out, trial courts should have substantial latitude to refuse waivers of conflicts of interest, not only in cases when an actual conflict can be demonstrated prior to trial, but also in situations when the potential for conflict exists that may result in an actual conflict once a trial begins.  Here, in light of the nature of the traffic stop and discovery of controlled substances, we believe that it is certainly foreseeable that conflicts between the co-defendants may arise throughout this proceeding.

**{¶20}** Accordingly, in the case at bar we do not believe that the trial court's disqualification of counsel constitutes an abuse of discretion.  Therefore, we hereby overrule appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[4] Additionally, a comment to the Ohio Rules of Professional Conduct is particularly salient in the case sub judice: "The potential for conflict of interest in representing multiple defendants in a criminal matter is so grave that ordinarily a lawyer should decline to represent more than one co-defendant." Prof.Cond.R. 1.7, Comment 15.

[Cite as *State v. Johnson*, 2022-Ohio-1479.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.